UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN DEVERA,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:21-cv-00823-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRMING THE COMMISSIONER<br><br>(Docs. 14, 15) |

    Plaintiff Susan Devera ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. (Doc. 1). The matter is before the Court on the certified administrative record ("AR"). (Doc. 9). Plaintiff filed a motion for summary judgment on February 2, 2022. (Doc. 14). Defendant filed an opposition on March 17, 2022. (Doc. 15). Plaintiff filed a reply brief on March 31, 2022. (Doc. 16). For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment and affirms the commissioner.[1]

**I.    Background**[2]

    On or around September 14, 2015, Plaintiff protectively filed applications for DIB. (AR 34, 373). Plaintiff's applications alleged disability beginning January 15, 2014. (AR 373). The

---

[1] The parties have consented to the jurisdiction of a U.S. magistrate judge for all proceedings in this action, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 8).

[2] The procedural background is recounted to the extent that it is relevant to Plaintiff's arguments before the Court.

claims were initially denied on January 27, 2016, and upon reconsideration on August 4, 2016. (AR 198, 207). On August 16, 2016, Plaintiff filed a request for hearing (AR 212-13), and on November 1, 2017, an administrative law judge ("ALJ") held a telephonic hearing. (AR 86-110). Plaintiff testified at the hearing with the assistance of counsel. *Id*. On June 13, 2018, the ALJ issued a decision finding Plaintiff "not disabled." (AR 172-190). However, the Appeals Council remanded the matter to a different ALJ on November 1, 2019. (AR 193-94). The Appeals Council found the ALJ erred because, despite giving substantial and great weight to the psychological consultative examiner's opinion, Plaintiff's residual functional capacity ("RFC") contained no assessment as to her mental work-related activities. (AR 193). The Appeals Council further found that although the ALJ gave substantial weight to the opinions of the reconsideration level consultant, the ALJ nevertheless rejected that consultant's opinion that Plaintiff could frequently handle and finger and could occasionally crawl without providing any rationale. (AR 193-94). The Appeals Council noted Plaintiff's argument that the ALJ's appointment violated the Appointments Clause of the U.S. Constitution. (AR 194).

    The Appeals Council remanded Plaintiff's case to a different ALJ, believing that the remand would cure any constitutional defect since on July 16, 2018, the Acting Commissioner of Social Security ratified all Administrative Law Judge appointments and approved them as her own. *Id*. In addition, the Appeals Council directed the newly assigned ALJ to give further consideration to Plaintiffs maximum RFC during the entire period of disability and provide a rationale with specific references to the record in support of her assessed limitations. (AR 194). Furthermore, the Appeals Council directed the ALJ to extend Plaintiff an opportunity for a new hearing, take any further action to complete the administrative record, and issue a new decision. (AR 194).

    The newly assigned ALJ held a hearing on March 3, 2020 (AR 75), and again on June 15, 2020. (AR 72). During the hearing on June 15, 2020, Plaintiff appeared in person and was represented by an attorney. (AR 54). A vocational expert ("VE") also appeared and testified. *Id*. The ALJ issued an adverse decision on July 23, 2020. (AR 34). Plaintiff submitted evidence to be reviewed by the Appeals Council. (AR 5). On March 19, 2021, the Appeals Council declined

2

to review the ALJ's decision. (AR 2). Thereafter, Plaintiff initiated this action on May 20, 2021. (Doc. 1).

**A.     The ALJ's Decision**

The ALJ engaged in the five-step sequential evaluation process for determining whether an individual is disabled under 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date. (AR 20). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar and thoracic spine, right carpal tunnel syndrome, cervical degenerative disc disease with radiculopathy, and right shoulder degenerative disc disease constituted severe impairments. (AR 20). The ALJ found that Plaintiff's hypertension, diabetes, and eye health/vision issues were not severe impairments. *Id*.

In addition, the ALJ noted that "[a]lthough the claimant did not endorse having a disabling mental health condition during her initial application for disability benefits, during the most recent hearing, the claimant reported that she experienced mental health symptoms that included depression, difficulty focusing, and difficulty remembering." (AR 22 citing AR 402-08; AR 66). The ALJ further noted that during a mental health consultative examination in June 2016, the examiner diagnosed Plaintiff with mental disorders consisting of history of physical abuse of adult, by history (victim); dysthymic disorder, late onset; pain disorder associated with both psychological factors and a general medical condition, chronic; and major depressive disorder, recurrent mild severity. (AR 22).

However, the ALJ acknowledged that Plaintiff never reported that she spent time in a psychiatric hospital, nor did she endorse receiving mental health treatment aside from medication, which was prescribed about eight months prior to the examination – despite her reports of having an abusive husband and a son with mental health problems. *Id*. The ALJ cited to an examination conducted by Dr. Philip Cushman in June 2016 during which Plaintiff appeared to be only mildly depressed and had at least low-average intellect. The examination results supported only mild difficulties with verbal concentration skills. The ALJ characterized Dr. Cushman's report of Plaintiff's activities of daily living to reflect that Plaintiff was "rather independent." (AR 22 citing AR 756).

1       The ALJ further found that aside from the mental health consultative examiner, no acceptable medical source diagnosed Plaintiff with a mental health condition based on objective evidence. Likewise, the ALJ found that Plaintiff had minimal mental health treatments, which consisted largely of medication only. (AR 22). Plaintiff had many mental/psychological statuses that were normal during examinations, reported a normal mood through those examinations and even denied having depression and/or anxiety during some examinations. (AR 22-23). Plaintiff was not specifically treated for memory problems and denied having memory issues during certain examinations. Plaintiff presented as largely cooperative, alert/oriented and was never observed to be disheveled. (AR 23 citing 529, 584, 726, 771, 760, 848, 907, 920, 1005 1034, 1125, 1262, 1573, 1580). Ultimately, the ALJ found that Plaintiff did not have a medically determinable mental impairment, and even if she did, it would not be severe. (AR 23).

      At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ paid particular attention to listing 1.02 for major dysfunction of a joint but found that Plaintiff could not meet or medically equal that listing as the record did not demonstrate an inability to perform fine or gross movements effectively, or an inability to ambulate effectively. (AR 24). Likewise, the ALJ considered listing 1.04, for degenerative disc disease, and found that the record failed to establish the listing's requirements. *Id*.

      The ALJ considered listing 11.14A which requires peripheral neuropathy with disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities. The ALJ also considered listing 11.14B but found that the record failed to satisfy the requirements of the listing. (AR 24).

      The ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant can lift 20 pounds occasionally, 10 pounds frequently; stand, walk, or sit for 6 out of 8 hours each; frequent ramps or

4

> stairs; only occasional ladders, ropes or scaffolds; frequent balance; occasional stoop, kneel, crouch, or crawl; frequent handling or fingering; no work at heights or with dangerous moving machinery.

(AR 24).

At step four, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not consistent with the medical evidence and other evidence of record. (AR 26). Specifically, the ALJ found that Plaintiff's activities of daily living did not support her subjective complaints. The ALJ noted a discrepancy between Plaintiff's responses in an exertional questionnaire where she claimed that her family members did grocery shopping for her, and a function report in which she reported that she went shopping in general, including grocery shopping, twice a month. (AR 26). Likewise, Plaintiff endorsed going shopping during the hearing, but with assistance. The ALJ further noted that Plaintiff indicated in her function report that she prepared meals daily, but with assistance in only some tasks, like opening cans. (AR 26 citing 417-21, 422-26, 453-58).

As for opinion evidence, the ALJ gave little weight to the opinion of Dr. Philip M. Cushman, Ph.D., who performed a mental health consultative exam on Plaintiff on June 20, 2016. (AR 29). Dr. Cushman diagnosed Plaintiff with physical abuse of adult by history (victim); dysthymic disorder, late onset; pain disorder associated with both psychological factors and a general condition, chronic; and major depressive disorder, recurrent, mild severity. (AR 756). Dr. Cushman opined that as a result of Plaintiff's diagnoses, she will have difficulties performing detailed or complex tasks in a workplace but will nevertheless be able to complete them. In addition, Dr. Cushman opined that Plaintiff would struggle with regular work attendance and working a normal workday or workweek due to her pain, malaise, and confusion. (AR 29, 756).

The ALJ did not find Dr. Cushman's opinion persuasive since he based his opinion on a one-time examination that occurred early within the full period of disability at issue. In addition, Dr. Cushman did not review much of the medical record in rendering his opinion. Dr. Cushman's opinion was vague in some respects, since it is not clear what extent of any limitation existed when he stated that Plaintiff would have difficulties with certain things. The ALJ also found that

Dr. Cushman's opinion was inconsistent with his own objective findings or the record as a whole. (AR 29).

In addition, the ALJ found that Dr. Cushman relied heavily on Plaintiff's subjective complaints to render mental health diagnoses, including Plaintiff's reports of physical pain. However, Dr. Cushman objectively found Plaintiff to be only mildly depressed. The ALJ also found that the record as a whole showed that Plaintiff complained of being depressed at times but received minimal treatment – consisting of just medication. Plaintiff did not receive mental health therapy and had many mental/psychological statuses that were normal. (AR 29 citing AR 529, 584, 726, 752-56, 760, 828, 848, 907, 920, 1005, 1034, 1125, 1262, 1573, 1580).

Likewise, the ALJ gave little weight to Regina Flowers, a family nurse practitioner (NP) and Plaintiff's treating healthcare provider. (AR 30-31). NP Flowers completed a form relating to Plaintiff's functional capacity in which she reported that Plaintiff's symptoms and limitations first appeared on June 1, 2018, over four years after Plaintiff's alleged onset date of January 15, 2014. (AR 1655). NP Flowers reported that Plaintiff was mildly limited in her ability to understand, remember, or apply information; mildly limited in her ability to interact with others; and markedly limited in her ability to concentrate, persist, or maintain pace. (AR 32 citing 1657-58). NP Flowers did not provide a limitation regarding Plaintiff's ability to adapt or manage but did comment that Plaintiff's depression and mood swings make her emotions unstable. NP Flowers assessed that Plaintiff's short-term memory was mildly limited and that her long-term memory was moderately limited.

NP Flowers opined that Plaintiff would not be limited in remembering locations and work-like procedures but would be moderately limited in understanding and carrying out very short and simple instructions and markedly limited in understanding detailed but uninvolved written or oral instructions. NP Flowers further indicated that Plaintiff would be off task for more than 50% of the workday. She also opined that Plaintiff would be absent four or more days per month. (AR 32 citing AR 1659).

The ALJ gave little weight to NP Flowers's opinion. The ALJ reasoned in part that NP Flowers provided her opinion on a check-the-box-form with little narrative in support. NP

Flowers did not discuss any objective examination findings. The ALJ found NP Flowers' opinion to be vague since it did not provide any specific mental function limitations. (AR 32). Furthermore, the ALJ determined that NP Flowers is not an acceptable medical source as a family nurse practitioner, since there is no indication that she is knowledgeable of or experienced in the SSA's rules and regulations to assess mental health functioning. (AR 32).

Separately, the ALJ found that NP Flowers' opinion was not consistent with the record as a whole. For example, the ALJ pointed to portions of the record that reveal minimal mental health treatment – consisting largely of medication only but no formal mental health therapy. Additionally, Plaintiff has several mental/psychological statuses that were normal. (AR 33 citing 529, 584, 526, 752-56, 760, 828, 848, 907, 920, 1005, 1034, 1125, 1262, 1573, 1580). During the hearing, Plaintiff reported that her depression stemmed from her physical issues, and she appeared to be independent in her activities of daily living, subject to her physical problems as opposed to any mental issues. The ALJ found that the medical record does not support the limitations set out by NP Flowers. (AR 33).

At step five, the ALJ found that Plaintiff is capable of performing past relevant work as a retail sales clerk. (AR 33). Thus, the ALJ found that Plaintiff was not disabled.

**II.     Standard of Law**

**A.     The Disability Standard**

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

7

C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC. 20 C.F.R. § 416.920(e). The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2). *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, whether severe or not severe."). The RFC is not a medical opinion. 20 C.F.R. § 404.1527(d)(2). Rather, it is a legal decision that is expressly reserved to the Commissioner. 20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.")

At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining

credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determinations." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation and citation omitted). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**III.     Discussion**

Plaintiff advances two assignments of error for the Court's review: (1) the ALJ's findings that Plaintiff's mental health impairments, including those related to her complaints of chronic pain, did not result in any mental limitation on her ability to work were not supported by substantial evidence; and (2) the ALJ and Appeals Council's decisions are constitutionally defective due to a statutory scheme that violates separation of powers.

**A.     Whether The ALJ Improperly Evaluated Plaintiff's Alleged Mental Impairments**

Plaintiff contends that the ALJ erred by not accounting for and incorporating into the RFC restrictions pertaining to her alleged mental impairments, which are related to her physical pain limitations. Plaintiff further asserts that the ALJ erred by not crediting Dr. Cushman and NP Flowers with significant weight.

"At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing *Bowen*, 482 U.S. at 140-41). "[A]t the step two inquiry, … the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone is sufficiently severe." *Id*. at 1290 (citations omitted).

"[A]n impairment is not severe if it does not significantly limit [the claimant's]…ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520(c); 404.1521(a)).  Basic work activities are the abilities and aptitudes needed to do most jobs.  20 C.F.R. § 416.922(b). Examples of "basic work activities" include (1) "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" (2) "[c]apacities for seeing, hearing, and speaking;" (3) "[u]nderstanding, carrying out, and remembering simple instructions;" (4) "[u]se of judgment;" (5) "[r]esponding appropriately to supervision, co-workers and usual work situations; and" (6) "[d]ealing with changes in a routine work setting." 20 C.F.R. § 416.922(b)(1-6).

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an

[individual's] ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling ["SSR"] 85-28 "SSR 85-28"). Furthermore, "an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citing Social Security Ruling 85-28 "SSR 85-28"); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (finding claimant "failed to meet his burden of establishing disability" where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

"Great care should be exercised in applying the not severe impairment concept." SSR 85-28. "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step.'" *Webb*, 433 F.3d at 687 (alteration in original) (quoting SSR 85-28).

Ultimately, "[t]he severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290 (citing *Yuckert*, 482 U.S. at 153-54). However, "[t]he plaintiff has the burden of establishing the severity of the impairment." *Cookson v. Comm'r of Soc. Sec.*, No. 2:12-cv-2542-CMK, 2014 WL 4795176, at *2 (E.D. Cal. Sept. 25, 2014).

In this case, Plaintiff argues that the ALJ rejected NP Flowers and Dr Cushman's opinions for legally insufficient reasons. In general, an ALJ must consider the limiting effect of all impairments, including those that are non-severe, in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). However, the ALJ is not required to include limitations in the RFC if the record supports a conclusion that the non-severe impairments do not cause a significant limitation in the claimant's ability to work. *See Koshak v. Berryhill*, No. CV 17-6717-AFM, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018) (finding that the ALJ was not required to include insignificant mental impairment in Plaintiff's RFC since he provided reasons supported

by substantial evidence to justify non-inclusion); *Banks v. Berryhill*, No. CV 17-05535-JDE, 2018 WL 1631277, at *4 (C.D. Cal. Apr. 2, 2018) ("Because Plaintiff's mental impairment was not severe and did not cause significant impairment, the ALJ was not required to include it in Plaintiff's RFC."). If the ALJ "actually reviews the record and specifies reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error." *Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); *McIntosh v. Berryhill*, No. EDCV 17-1654 AGR, 2018 WL 3218105, at *4 (C.D. Cal. June 19, 2018) (finding that ALJ's decision to omit non-severe mental impairment in the RFC was supported by substantial evidence).

Since Plaintiff filed her application before March 27, 2017, 20 C.F.R. § 404.1527 applies. *Melynda G v. Kijakazi*, No. 5:20-cv-00890-JC, 2022 WL 911585, at *4 n.7 (C.D. Cal. Mar. 29, 2022). Under this operative regulation, the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. *Holohan*, 246 F.3d at 1202. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830-31. However, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)); *see Lester*, 81 F.3d at 830-31. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

**1. Whether the ALJ Erred in her Treatment of NP Flowers' Opinion.**

Plaintiff argues that since NP Flowers is her treating provider, the ALJ was to afford her opinions more weight because under the applicable regulations, treating providers "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective of the medical evidence..." 20 C.F.R. § 404.1527(c)(2).

The Commissioner counters that the ALJ correctly identified NP Flowers as a nonacceptable medical source under the applicable regulations. (Doc 15 p. 15) (citing AR 33). The Court agrees with the Commissioner. A nurse practitioner is not an acceptable medical source under the applicable regulations for claims filed prior to March 27, 2017. 20 C.F.R. §§ 404.1502(a)(7); 404.1527. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) ("Acceptable medical sources specifically include licensed physicians and licensed psychologists, but not nurse practitioners."); accord *Coleman v. Saul*, 979 F.3d 751, 757 (9th Cir. 2020) (noting that under the applicable regulations prior to March 27, 2017, nurse practitioners qualified as "other sources" and ALJ was only required to provide "germane reasons" to discount her testimony).

After noting that NP Flowers was not an acceptable medical source, the ALJ provided germane reasons for discounting her opinion. Specifically, the ALJ noted that (1) NP Flowers provided her opinion through a check-the-box form with little narrative support; (2) her opinion was vague and did not cite specific mental function limitations; (2) her opinion did not discuss any specific objective examination findings; (3) there is no indication that NP Flowers is knowledgeable in the rules and regulations of the SSA to assess mental health functioning; and (4) her opinion is not consistent with the record as a whole. (AR 32).

The ALJ also cited to various mental/psychological statuses in the record documenting Plaintiff as cooperative and alert. (AR 33 citing AR 529, 584, 726,755,760, 828, 848, 773, 907, 920, 1005, 1034, 1125, 1262, 1573, 1580). Specifically, the ALJ found NP Flowers' opinion that Plaintiff had a marked limitation to concentrate, persist, or maintain pace to be inconsistent with the record, which frequently showed Plaintiff as alert and attentive. (AR 33). The Court finds that the ALJ properly discounted NP Flowers' opinion and gave legally sufficient reasons for doing

13

so.

### 2. Whether the ALJ Erred in her Treatment of Dr. Cushman's Opinion

Plaintiff separately argues that the ALJ's analysis of Dr. Cushman's report was "particularly irksome and inapt," including by rejecting Dr. Cushman's opinions on the grounds that they are based on Plaintiff's subjective complaints. (Doc. 14-2 pp. 16-17, citing *Ryan*, 528 F.3d at 1200). Plaintiff also argues that the ALJ improperly discounted Dr. Cushman's opinion on vagueness grounds and because certain aspects of the opinion were undermined by Plaintiff's activities of daily living. *Id.* p. 18 (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)) (rejecting ALJ's conclusion that claimant's activities suggested an ability to work because they were sporadic). Instead, Plaintiff contends that the irregularity of her activities is evidence of her diminished capacity to perform anything more than "fairly isolated tasks, with assistance." *Id*. An ALJ may use a claimant's daily activities to discredit her subjective symptom testimony if the reported activities contradict the claimant's other testimony, or if the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "the mere fact that plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability." *Id*. (quoting *Vertigan*, 260 F.3d at 1050).

Plaintiff further criticizes the ALJ's references to normal mental and psychological statuses from treatment appointments as "highly selective and inapt." (Doc. 14-2 p. 19). Plaintiff argues that the various examples brought by the ALJ as evidence of normal psychological statuses stem from medical visits unrelated to her mental health, such as eye exams (AR 828, 1125), back pain exams, (AR 528), and exams for high blood sugar (AR 724). Thus, Plaintiff argues, the ALJ failed to provide "specific and legitimate" reasons for rejecting limitations described by Dr. Cushman. Plaintiff points to the following portions of the record as evidence of the connection between her pain and her mental health limitations. (Doc. 14-2 p. 16 citing AR 47, 683, 685, 689, 754, 1651, 756, 455, 528, 683, 577, 889, 1537, 567, 1572, 1589, 1644, 1656).

Were an ALJ to cite exclusively to a claimant's normal mental status findings at physical examinations, but the record contained mental health examinations describing abnormal results for an alleged mental impairment, the claimant could argue that the ALJ may have engaged in

14

cherry-picking. *E.g., Landis v. O'Malley*, No. 1:23-cv-00881-SKO, 2024 WL 1138183, at *7 (E.D. Cal. Mar. 15, 2024) (finding ALJ wholly ignored evidence of abnormal mental health examinations and focused only on normal mental health findings assessed during medical visits relating to claimant's physical conditions). Here, in contrast, many of the record citations Plaintiff offers in support of her claimed error document findings made during medical visits relating to physical conditions. For example, Plaintiff's citations to AR 47, 528 and 1572 pertain to her visits for low back and shoulder pain, AR 577 relates to a microbiology exam, and AR 1589 constitutes physical therapy records. (Doc. 14-2 p. 19).

The Court acknowledges that Plaintiff plausibly argues a reasonable reading of the records to which she refers and the medical opinions and diagnoses referenced therein reflect the interconnectedness between her physical pain and her mental health limitations. (Doc. 14-2 p. 16). But the ALJ's conclusion that Plaintiff engaged in conservative treatment by citing to physical health exams is just as responsive to the issue of interconnectedness. This is not a situation where the ALJ isolated a "specific quantum" of evidence but where the record as a whole supported a different interpretation. *Cf. Orn*, 495 F.3d at 630. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Magallanes*, 881 F.2d at 750 (citations omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679.

The Commissioner argues that the ALJ did provide specific and legitimate reasons for rejecting Dr. Cushman's opinion: (1) Dr. Cushman based his opinion on only a one-time examination early in the adjudication period; (2) Dr. Cushman did not review much of the medical record; (3) Dr. Cushman's statements regarding the extent of Plaintiff's limitations were unclear; (4) Dr. Cushman's own objective findings documented Plaintiff to be only mildly depressed; and (5) Dr. Cushman's opinion was inconsistent with the record as a whole. (AR 29). As to this final point, the ALJ found that the record consisted of a lack of evidence of formal mental health therapy plus multiple mental status reports documenting normal conditions. In light of this, the Commissioner argues the ALJ properly discounted Dr. Cushman's report for its lack of documented, objective medical abnormalities, noting that "the existence of a medical

15

determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities, i.e., medical signs and laboratory findings." (Doc. 14 pp. 14-15) (quoting *Ukolov*, 420 F.3d at 1005.

The Court concludes that some of the ALJ's reasons for discounting Dr. Cushman's opinion, in isolation, are unconvincing. For instance, that Dr. Cushman based his opinion on a one-time examination in the adjudication period does not by itself constitute a legitimate reason for rejecting his opinion. *Kellie W. v. Kijakazi*, No. 22-cv-02131-TSH, 2022 WL 17812926, at *7 (N.D. Cal. Dec. 19, 2022); *Ford v. Comm'r of Soc. Sec.*, No. 2:22-CV-0494-DMC, 2023 WL 5021162, at *8 (E.D. Cal. Aug. 7, 2023) (finding "one-time evaluation" reasoning to be unpersuasive since "[e]xamining medical source opinions, by their very nature are often based on a one-time examination of a claimant"). As for the ALJ's criticism of Dr. Cushman's opinion due to vagueness and his general assessment that Plaintiff would have "difficulties/difficult time" with certain things (AR 29), it is unclear which portion of Dr. Cushman's report the ALJ found vague; thus, this reason does not meet the specific and legitimate standard. *See Robert G. v. Comm'r of Soc. Sec.*, No. 1:18-cv-03064-JTR, 2019 WL 7811197, at *7 (E.D. Wash. Apr. 10, 2019) ("Simply labeling an opinion vague and contradictory with nothing more does not meet the specific and legitimate standard."). Likewise, a limited review of the record is not a sufficient reason to discount an examining source's opinion. *See Alderete v. Colvin*, No. 1:12-cv-01307-JLT, 2013 WL 4049064, at *9 (E.D. Cal. Aug. 7, 2013) ("the fact that Dr. Cushman offered an opinion upon a single evaluation and limited medical records is not a legitimate reason for rejecting his opinion."); *M.D.B. v. Berryhill*, No. 19-cv-02435-LB, 2020 WL 4051863, at *15 (N.D. Cal. July 20, 2020) ("Dr. Cushman's limited review of the record on its own is not a sufficient reason to discount his opinion.").

However, the ALJ also discounted Dr. Cushman's opinion in part based on his conclusion that the opinion is not consistent with his own diagnoses and the record as a whole. (AR 29). In so finding, the ALJ reasoned that, although Dr. Cushman relied heavily on Plaintiff's subjective complaints to render mental health diagnoses, he nonetheless objectively found Plaintiff's depression to be of "mild severity." (AR 756). Relatedly, the ALJ noted Plaintiff's minimal

16

treatment for her mental health, consisting largely of medication and several unremarkable mental health findings through her various physical examinations. (AR 33 citing AR 529, 584, 726,755,760, 828, 848, 773, 907, 920, 1005, 1034, 1125, 1262, 1573, 1580).

An ALJ can reject a physician's opinion that is premised on a claimant's subjective complaints that properly have been discounted. *Andrews v. Comm'r of Soc. Sec.*, No. 1:15-cv-00185-SAB, 2016 WL 8730665, at *9 (E.D. Cal. Feb. 5, 2016) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (1989), *superseded by* 20 C.F.R. § 404.1502(a)).[4] The Ninth Circuit distinguishes between a failure to seek mental health treatment *because of* a mental health condition, on the one hand, and avoidance due to personal preference on the other hand. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). Although Plaintiff takes issue with the ALJ's citations to various mental impressions made during clinical visits for physical complaints, she does not dispute the ALJ's finding that Plaintiff did not seek mental health treatment, which is a proper reason to discredit a claimant's credibility. *Tommasetti*, 533 F.3d at 1039 (citing *Smolen*, 80 F.3d at 1284); *Coleman*, 979 F.3d at 758 (finding that ALJ did err in finding opinion less persuasive since diagnosis was based on Plaintiff's self-reports, which in turn, were less persuasive due to history of drug seeking behavior).

Accordingly, the ALJ's discounting of Dr. Cushman's opinions was properly based on substantial evidence because the opinion was internally inconsistent and at odds with the record as a whole. Thus, the ALJ did not err either in excluding depression as an impairment altogether or alternatively, finding that, even if Plaintiff's depression constituted a non-severe impairment, it would not affect her limitations requiring adjustment to the RFC.

**B.     Whether the Decision of the ALJ or Appeals Council Judges Is Constitutionally Defective**

Plaintiff argues that the ALJ and Appeals Council who denied her application for benefits did not have authority to do so because of an unconstitutional appointment of the former Commissioner of Social Security. (Doc. 14-2 pp. 20-21; Doc. 16 p. 1). Plaintiff alleges that she

---

[4] 20 C.F.R. § 404.1502(a) are the amended regulations controlling SSA applications filed after March 27, 2017, and thus are inapplicable to this ruling.

17

1    suffered harm in the form of deprivation of a "constitutionally valid adjudication process" and
2    decision (Doc. 16 p. 3) and, thus, is entitled to a *de novo* hearing before a different ALJ.
3        In opposition, the Commissioner agrees that "42 U.S.C. § 902(a)(3) violates the separation
4    of powers to the extent it is construed as limiting the President's authority to remove the
5    Commissioner without cause." (Doc. 15 p. 2). However, under *Collins v. Yellen*, 141 S. Ct.
6    1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a
7    plaintiff seeking relief on that basis must show that the restriction actually caused her harm. *Id*.
8        "Under our Constitution, the 'executive Power' – all of it – is 'vested in a President,' who
9    must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot.*
10   *Bureau*, 591 U.S. 197, 203 (2020) (quoting Art. II, § 1, cl. 1; id., § 3). "Because no single person
11   could fulfill that responsibility alone, the Framers expected that the President would rely on
12   subordinate officers for assistance." *Id.* at 203-04. Thus, the President is constitutionally
13   authorized to select and remove executive officers as part of the executive power under Article II.
14   *Id.* at 204 (citing *Myers v. United States*, 272 U.S. 52 (1926)). For instance, the President
15   appoints and the Senate confirms the Commissioner of the Social Security Administration. *See*
16   42 U.S.C. § 902(a)(1). "An individual serving in the office of Commissioner may be removed
17   from office only pursuant to a finding by the President of neglect of duty or malfeasance in
18   office." 42 U.S.C. § 902(a)(3). Relevant here, Andrew Saul served as Commissioner from June
19   17, 2019, until July 9, 2021. Thereafter, Kilolo Kijakazi served as Acting Commissioner from
20   July 9, 2021, until December 20, 2023, when Martin O' Malley was appointed and is presently
21   serving as the Commissioner.
22       In *Kaufmann v. Kijakazi*, the Ninth Circuit found that the removal provision in 42 U.S.C.
23   § 902(a)(3) violates separation of powers principles as it limits the President's ability to remove
24   the Commissioner only for "neglect of duty or malfeasance in office." 32 F.4th 843, 849 (9th Cir.
25   2022). However, the court found that the unconstitutional provision does not necessarily taint the
26   remainder of the statute since the offending provision may be severed from the constitutionally
27   valid provisions of the statute. *Id.* (citing *Seila Law*, 591 U.S. at 233). Moreover, an
28   unconstitutional removal provision does not affect the *authority* of the underlying agency officials

18

to act. *Id.* (citing *Collins*, 141 S.Ct. at 1787-88 & n.23). And, consistent with *Collins*, the *Kaufmann* court reiterated that a claimant must demonstrate how the unconstitutional removal provision caused her actual harm. *Id.* (citations omitted).

In her reply, Plaintiff argues that the President strongly disapproved of the policy adjudication framework and processes established by the Commissioner at the time and removed him as soon as he believed that he could legally do so. (Doc. 16 p. 4). The court in *Kaufmann* rejected a similar assertion and found that such policy-based arguments are not particularized to a plaintiff, holding "if we agreed, then it would require us to undo *all* disability decisions made by the Social Security Administration while the removal provision was operative." *Kaufmann,* 32 F.4th at 850.[5]

Plaintiff's arguments that the outcome of her disability claims would have been different had the President immediately removed Commissioner Saul once he was inaugurated are too speculative. To be entitled to relief, the Ninth Circuit has noted that particularized harm is required – something akin to an allegation that a commissioner acting pursuant to a constitutionally infirm appointment directed the Appeals council to decide her case in a specific way. *Kaufmann*, 32 F.4th at 850. Plaintiff's allegations of harm – that she suffered from a constitutionally deficient adjudication process and decision by ALJ and Appeals Council (Doc. 14-2 p. 20) – fall short of this level of specificity. *See Ward v. Comm'r of Soc. Sec.*, No., 2022 WL 4008024, at *10 (D. Ariz. Sept. 2, 2022) (finding claims plaintiff "did not receive a constitutionally valid adjudication process from SSA's Appeals Council" and a "constitutionally valid determination by the Appeals Council" to be "unavailing" and insufficient harm to warrant remand); *Ramos v. Comm'r of Soc. Sec.*, No. 1:20-cv-01606-EPG, 2022 WL 10508, at *4 (E.D. Cal. Jan. 11, 2022) (rejecting plaintiff's argument that she has established sufficient harm based on the President's delay in terminating Commissioner Saul and her denial of benefits).

///

---

[5] The Court notes that Plaintiff has previously raised this same challenge under the Appointments Clause in one of her requests to have the Appeals Council to review her decision. (AR 193). The Appeals Council remanded her case partially because the Acting Commissioner of Social Security of the time ratified all ALJ appointments and approved them as her own. *Id*.

**IV.     Conclusion**

In light of the foregoing, it is HEREBY ORDERED:

1. Plaintiff's motion for summary judgment (Doc. 14) is DENIED;
2. The decision of the Commissioner of Social Security is AFFIRMED.
3. The Clerk of the Court is directed to enter judgment in favor of the Commissioner of Social Security and close this case.

IT IS SO ORDERED.

Dated:   **June 18, 2024**                                    _____
                                                                            UNITED STATES MAGISTRATE JUDGE